128 P.3d 351

**Gary Edward CAMP, Plaintiff–Appellee,**

v.

**Wailani Luella CAMP, Defendant–Appellant.**

No. 26452.

Intermediate Court of Appeals of Hawai'i.

Jan. 12, 2006.

Certiorari Denied Feb. 17, 2006.

As Corrected March 3, 2006.

Peter Van Name Esser, Honolulu, for defendant-appellant.

Howard Glickstein, Honolulu, for plaintiff-appellee.

BURNS, C.J., WATANABE and FOLEY, JJ.

PER CURIAM.

Defendant–Appellant Wailani Luella Camp (Wailani or Defendant) appeals from the February 24, 2004 Divorce Decree entered in the Family Court of the First Circuit.[1]

We conclude that: (1) the February 24, 2004 Divorce Decree did not take effect prior to February 24, 2004; (2) Plaintiff–Appellee Gary Edward Camp (Gary or Plaintiff) died on October 17, 2003, prior to the February 24, 2004 Divorce Decree; (3) Gary's death on October 17, 2003, extinguished[2] the divorce case and the family court's jurisdiction to enter any subsequent orders/decrees/judgments, including the February 24, 2004 Divorce Decree. We remand with instructions.

### BACKGROUND

Gary was born on October 6, 1935. Wailani was born in January 1942.

---

1. The Honorable Gregg Young presided.

2. We use the word "extinguished" rather than the word "abated" because "extinguished" is the word used in Hawai'i Family Court Rules Rule 25 (2005) which pertains to the subject of the "substitution of parties".

In July 1976, Wailani purchased 1312 Mokapu Boulevard, Kailua, Hawai'i, 96734 (Mokapu property) as a leasehold estate.

Gary and Wailani were married on May 22, 1981. When they married, Gary owned a residence in California. In 1986, (1) Gary (a) sold his California residence, netting $112,211.24 and (b) retired as an International Brotherhood of Electrical Workers electrician with 25.85 years of service; and (2) Wailani added Gary to her Mokapu title as a tenant in common, not by the entirety.

In 1994, Gary and Wailani purchased the fee of the Mokapu property.

On November 2, 2001, Gary filed a complaint for divorce. On May 29, 2002, Judge Bode A. Uale entered an order stating, in relevant part,

> without prejudice to final accounting and allocation at time of trial[,] Plaintiff agrees (1) to pay Defendant $300 per month commencing June 1, 2002 as and for temporary alimony ...; (2) to pay monthly mortgage payments ...; and (3) to permit Defendant to continue to apply for reimbursement of her medical expenses from Plaintiff's medical insurance policy[.]

On October 25, 2002, Wailani filed a motion to set the case for a contested bench trial.

Plaintiff's Position Statement filed on January 6, 2003, states, in relevant part:

> Plaintiff is seven years older than Defendant, and his health is very poor. He has had heart valve replacement in 1993 and therefore, he cannot perform strenuous work. He has hearing impairment from his service in the Korean War, and he is classified as disabled as a result. He was diagnosed with cancer in 1994 and completed treatment in 1995. Plaintiff recently had a biopsy and awaits those result [sic]. Plaintiff also has diabetes, which was diagnosed in 1997.

In Plaintiff's Amended Position Statement filed on March 25, 2003, Gary contended that he should be awarded all of the Mokapu property subject to its mortgage. He alleged that he was not aware until these divorce proceedings that Wailani was the owner of one-half of the property at 835 Mokulua Drive, Lanikai, Hawai'i (Lanikai property). He further alleged, in relevant part:

> h) In 1992, the parties declared their intention to divorce. Plaintiff filed for a Complaint For Divorce, Defendant filed an Answer, and proposed divorce decrees were exchanged....

> i) Throughout the first divorce proceedings, Defendant's one half ownership interest in the Lanikai property was not disclosed to Plaintiff or his counsel. There was only one mention of Defendant having a "convenience interest" in her mother's Lanikai property (the co-owner was Agnes K. Wright, Defendant's mother).

> j) In 1994, in the course of the parties' refinancing of the Mokapu mortgage, in part to purchase the fee to that property, a multitude of documents were executed by the parties, for that transaction. Among those papers was a letter, purportedly executed by Plaintiff, under notary seal, (hereafter referred to as "marital agreement"), that stated that he renounced any claim he may have to the Lanikai property. The Lanikai property was put up as partial collateral for the Mokapu loan, with Agnes Wright signing onto the parties' second mortgage for Mokapu as a security collateral for their loan.... That marital agreement was procured by fraud,....

> k) Despite the dismissal of the divorce, in late 1992, the parties continued to have marital problems, and they continued to express their intention to divorce. In 2001, Plaintiff re-filed for the divorce. In the course of discovery, Plaintiff learned that Defendant had sold her interest in the Lanikai property to her children and daughter-in-law, for $225,000.00.

The divorce trial occurred on April 1, 2003, August 4, 2003, and August 5, 2003.

On April 24, 2003, Gary executed his Last Will (i) giving "all of my estate to the trustee under that Trust Agreement in which I am both the current trustee and trustor, which Trust is dated April 24, 2003"; and (ii) appointing his adult daughter from a prior marriage, namely Jean Ann Camp, as the personal representative of his estate.

On April 24, 2003, Gary executed a Deed conveying his interest in the Mokapu property to "GARY E. CAMP, TRUSTEE OF THE GARY E. CAMP REVOCABLE LIVING TRUST DATED April 24, 2003[.]"[3]

At the conclusion of the trial on August 5, 2003, the court ordered the parties to file closing briefs by August 26, 2003, and to file responsive briefs by September 3, 2003, and stated that the court would render a written decision by September 16, 2003. In its written Decision and Order entered on October 10, 2003 (October 10, 2003 Decision and Order), the court decided, in relevant part:

II. *Relevant Facts and Reasonable Inferences Therefrom.*

The parties are senior citizens, both in their 60's, with Plaintiff suffering a variety of health ailments, including borderline diabetes, high blood pressure, an artificial heart valve requiring medications which allegedly affect his short-term memory, cancer (1995, in remission) and recent, April 21, 2003, hernia surgery.

. . . .

2. *Real Property Ownership.*

. . . .

b. *Mokapu.* Defendant purchased this property, as a leasehold estate titled solely in her name, in July 1976. . . .

. . . .

After the sale of [Plaintiff's California residence], Defendant added Plaintiff to her Mokapu title as a tenant in common, not by the entirety. Mokapu served as the parties' marital residence from 1986 until DOS [date of separation]. It is currently occupied by Plaintiff through a restraining order against Defendant.

. . . .

As of March 2003, Mokapu's FMV [fair market value] is placed at $542,500 with a present mortgage balance of $200,000, . . . .

. . . .

NOW THEREFORE, IT IS ADJUDGED AND DECREED as follows:

A. *Mokapu.* . . . Plaintiff shall be awarded Mokapu as his sole and separate property and shall refinance it freeing Defendant of any liability thereon, as soon as possible, but no later than one year after the signing and filing of the Divorce Decree. . . . Plaintiff shall pay Defendant $42,003.14, as an equalization payment, on or before the date of said refinancing at 8% per annum interest from the date of the signing and filing of the Divorce Decree.

. . . .

D. *Personal Property and Financial Accounts.* The parties' personal property, not already divided or already held in his or her name alone, shall be awarded to each of the parties by mutual consent, as was a $5,000 mink coat to Defendant. Any personal property which the parties are unable to divide by agreement shall be donated to a charity chosen jointly by their counsel.

. . . .

J. *Divorce Decree.* Based upon the evidence adduced at trial and the court having jurisdiction over all matters submitted at trial, a divorce, from the bonds of matrimony on the grounds that the marriage is irretrievably broken, shall be granted to Plaintiff effective upon the signing and filing of a Divorce Decree to be prepared by the Plaintiff.

The October 10, 2003 Decision and Order also decided that, when Wailani and Gary were married, the Lanikai property was owned one-half by Wailani and one-half by her mother Agnes Wright (Agnes). Agnes lived there with her disabled brother Bernard Hauanio. In 1998, Wailani gifted her interest in the Lanikai property one-half to her son William Broad (William) and one-half to her daughter Laura Turner. In 1998, by an agreement of sale, Agnes sold her one-half interest in the Lanikai property to William and his wife "Tiare–Cowan–Broad". The October 10, 2003 Decision and Order decided that "Lanikai's present title shall

---

**3.** It appears that, when the court entered the October 10, 2003 Decision and Order, it was unaware that, on April 24, 2003, Gary had conveyed his interest in the Mokapu property to

"GARY E. CAMP, TRUSTEE OF THE GARY E. CAMP REVOCABLE LIVING TRUST DATED April 24, 2003[.]"

remain undisturbed, status quo, with the exception that separate life estates in Lanikai are hereby created, ordered and decreed in favor of Bernard Hauanio, Agnes Wright and Defendant."[4]

On October 17, 2003, Gary died. On October 20, 2003, apparently unaware of Gary's death, Wailani filed a motion for reconsideration requesting that the family court[5]

> reconsider in part its award or credit to Plaintiff of (1) the $112,211.24 proceeds from the [Plaintiff's California residence] sale on the grounds that appreciation of [Plaintiff's California residence] during the marriage is marital partnership property; (2) the $56,105.62 for renovations to the Mokapu Boulevard property on the grounds that the funds expended were marital partnership property or, in the alternative, Plaintiff would receive a double recovery of this amount; and (3) the $34,776.00 for 60 months of mortgage payments on the Mokapu Boulevard mortgage on the grounds that Plaintiff's income as an electrician used for payment of the mortgage was marital partnership property.

On October 30, 2003, Wailani notified the court of Gary's death and moved to dismiss the divorce case, asserting that the court lacked jurisdiction.[6] On November 6, 2003, Jean Ann Camp, as personal representative of Gary's estate (JeanPR), filed her opposition to Wailani's motion for reconsideration. On November 12, 2003, Wailani filed her reply in support of her motion for reconsideration. On November 17, 2003, the court entered its order stating, in relevant part:

> Defendant is correct that the court erred and the Mokapu renovations credit to the Plaintiff consists of a double recovery to Plaintiff. Accordingly, the $56,105.62 cost of the Mokapu renovations shall be a credit to the Defendant and Plaintiff's payment to Defendant for his sole title to the Mokapu property should be increased accordingly.

On December 22, 2003, JeanPR filed two motions: (1) to be substituted as a party in place of Gary, and (2) for entry of a divorce decree *nunc pro tunc* to October 10, 2003. In an affidavit accompanying the first motion, Jean stated, in relevant part: "My fa-

---

4. Assuming Wailani gifted her interest in the net market value of the Lanikai property one-half to her son William Broad (William) and one-half to her daughter Laura Turner and, by an agreement of sale, Agnes sold her one-half to William and his wife "Tiare–Cowan–Broad", we question the family court's jurisdiction in this divorce case to enter any orders affecting the rights of the non-party owners of the Lanikai property.

5. It appears that, in dividing and distributing the assets and debts of the parties, the family court did not apply the Partnership Model Division method explained and applied in *Jackson v. Jackson*, 84 Hawai'i 319, 933 P.2d 1353 (App.1997), and cases cited therein.

6. Hawai'i Family Court Rules Rule 25 (2005) provides, in relevant part:

   **SUBSTITUTION OF PARTIES.**
   (a) Death.
   (1) If a party dies and the case is not thereby extinguished, the court may on motion order substitution of the proper parties where appropriate. The motion for substitution may be made by the successors or representatives of the deceased party or by any party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of process. Unless the motion for

substitution is made not later than 120 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.
   (2) If a party to any action or motion relating to any action dies, and if it appears that the action is thereby extinguished, the surviving party shall suggest the death of the party and also move that the action is thereby extinguished and should be dismissed, and shall serve such suggestion and motion on all parties, including the personal representative of and the attorney of record for the deceased party, if any, and on any children of the deceased party, known to the suggesting party, in the manner provided for service in these rules. Unless objections are filed within 30 days after the last date of service of said suggestion and motion, an order dismissing the action without prejudice, to be prepared by the attorney for the surviving party, shall be entered. Where objections to the dismissal of such action are filed within said 30–day period or any extension granted by the court, the court shall hear said objections after notice to all persons who have appeared in the action, and the attorney of record for the deceased party, determine whether or not the case should be dismissed, and enter an appropriate order.
   . . . .

ther began this divorce with the defendant approximately two years ago. The last two years of my father's life were consumed by a variety of legal events including ·a criminal prosecution of the defendant for assault against my father that resulted in a conviction."

On January 16, 2004, after a hearing on January 15, 2004, the court entered an order substituting JeanPR as a party in place of Gary.

On January 21, 2004, after a hearing on January 15, 2004, the court entered a "Decision and Order Re (1) Defendant Wailani Camp's Motion to Dismiss Filed on October 30, 2003 & (2) Motion for Entry of Decree of Absolute Divorce **Nunc Pro Tunc** Filed on December 22, 2003" (January 21, 2004 Decision and Order) which stated, in relevant part:

> On October 10, 2003, this court issued and filed a detailed trial Decision And Order containing the rationale for court's conclusions and instructing Gary to prepare and submit for signing and filing a Decree of Absolute Decree [sic] consistent with the trial Decision And Order's provisions as decreed.
>
> On October 17, 2003, before submitting the divorce decree Gary died.
>
> . . . .
>
> Thus, the issue before the court is whether the death of a party in a divorce trial occurring after the filing of the trial court's Decision and Order but before the signing and filing of the Decree of Absolute Divorce terminates the Family Court's jurisdiction.
>
> . . . .
>
> [JeanPR] urges this court to follow the lead of California family court in similar divorce death-of-a-party situations to retain jurisdiction and backdate a judgment. However, the California family court is governed and guided by a specific death-of-a-party statute. Cal. Family Code Section 2346.
>
> Wailani's case authorities appear inapplicable and distinguishable from this case. . . . In *Ogata v. Ogata, supra,* [30 Haw. 620 (1928),] although it is not a

death-of-a-party case, it is somewhat instructive to the issue of decision versus decree. While *Ogata* concludes that a decree is necessary for finality, it does so because the trial court's decision was conclusive and absent any rationale, stating, . . . [a decree] "aids in showing the intention of the court." *Supra,* at p. 622. Here, the trial court's intention is very much detailed in its trial Decision And Order filed October 17[sic], 2003.

> Thus, this court finds [sic] that a Decree of Absolute Divorce is a mere formality to its Decision and Order filed October 17[sic], 2003, and accordingly, Gary's death on October 17, 2003 occurred subsequent to the actual finality of the divorce action.
>
> IT IS HEREBY ADJUDGED, DECREED AND ORDERED that [Wailani's] Motion to Dismiss filed on October 30, 2003 is denied; [JeanPR's] Motion For Entry Of Decree Of Absolute Divorce **Nunc Pro Tunc** filed December 22, 2003 is granted, but denied as to **Nunc Pro Tunc.**
>
> Counsel for Plaintiff shall prepare and submit within 10 days from the filing hereof a Decree Of Absolute Divorce incorporating the provisions decreed in the trial Decision And Order filed October 10, 2003 for signing and filing by the court.

On February 24, 2004, the court entered a Divorce Decree that states, in relevant part:

> IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:
>
> The material allegations of the Complaint for Divorce have been proved and, therefore, Plaintiff shall be entitled to a divorce from the bonds of matrimony on the grounds that the marriage is irretrievably broken, and this Court has jurisdiction to enter this Divorce Decree.
>
> A. *Mokapu.* As ordered . . . , Plaintiff shall be awarded the real property located at 1312 Mokapu Boulevard, Kailua, Hawai'i, 96734, which property is titled in the parties' joint names, as tenants in common. Based on Mokapu's present net fair market value share to each party of $171,-250.($542,500–$200,000.[mortgage] divided by 2) Plaintiff shall refinance the mortgage that encumbers that property, so as to free Defendant from any liability thereon, as

soon as possible, but no later than one year after the signing and filing of the Divorce Decree; Plaintiff shall pay to Defendant the sum of $98,108.76 as an equalization payment on or before the date of said refinancing at 8% per annum interest from the date of the signing and filing of the Divorce Decree.

B. *Lanikai.* The title to the Lanikai property, located at 835 Mokulua Drive, Kailua, Hawaiʻi, 96734, shall remain as it is, in the names of Defendant's son, William Broad, his wife Tiare–Cowan–Broad, and Defendant's daughter, Laura Turner, with the provision that separate life estates in that property are hereby created, ordered and decreed in favor of Bernard Haunio, Agnes Wright, and Defendant.

C. *Automobiles.* Plaintiff shall be awarded the 1994 Ford Aerostar van as his sole and separate property. Defendant shall be awarded the MG kit car as her sole and separate property. Plaintiff shall pay Defendant an automobile equalization amount of $3,950., upon or before refinancing the Mokapu property.

D. *Personal Property and Financial Accounts.* The parties' personal property, not already divided or already held in her or her name alone, shall be awarded to each of the parties by mutual consent, as was a $5,000. mink coat to Defendant. Any personal property which the parties are unable to divide by agreement shall be donated to a charity chosen jointly by their counsel.

E. *Marital Business.* The Sign Sellers business shall be awarded to Plaintiff as his sole and separate property. The Weekenders Clothing business shall be awarded to Defendant as her sole and separate property.

F. *Debts.* The parties shall each pay Agnes Wright $3,360.20 upon the signing and filing of the Divorce Decree. The parties shall be equally responsible to pay the Sign Sellers' delinquent GET debt as of December 31, 2001, upon verification of the balance due by the State of Hawaii Department of Taxation. Each party shall bear individual responsibility for any debt solely in his or her name.

G. *Alimony.* Plaintiff having waived alimony, no order shall be entered in his favor. However, Plaintiff shall (1) pay to Defendant an arrearage owed to Defendant for temporary alimony ($3,600.00 total) and temporary medical reimbursements, both of which shall terminate as of September 30, 2003, and (2) hereafter pay for or provide a health insurance plan for Defendant which shall include Defendant's verified co-payments not to exceed $100/month, until further order of the court.

H. *Retirement.* Defendant shall be awarded 9.7% of Plaintiff's retirement benefits pursuant to the Linson Formula, commencing October 1, 2003. Defendant has no retirement benefits of her own to share with Plaintiff.

I. *Attorney's Fees and Costs.* Each party shall be solely responsible for his and her own attorneys' fees and costs.

On March 15, 2004, Wailani filed a notice of appeal. The record on appeal was filed on May 17, 2004.

On July 16, 2004, the court entered an "Order Granting Ex Parte Motion to Order the Department of Health, State of Hawaii, to Prepare an Amended Certificate of Death for Gary Edward Camp, Plaintiff Now Deceased, to Reflect That Defendant, Wailani Luelle Camp and Plaintiff Were Divorced as of the Date of Death, By Order of the Family Court".

On July 27, 2004, the "State of Hawaii, Department of Health's Motion for Clarification of Discrepancy in Court Orders" was filed.

On August 9, 2004, Wailani filed "Defendant Wailani Luella Camp's Motion to Amend Divorce Decree to Render It an Appealable Decree". On September 14, 2004, the Hawaiʻi Supreme Court entered an order (1) noting that "the family court considered the motion and indicated its inclination to grant the requested relief and approve a stipulation agreed to by the parties[,]" and (2) remanding the case to the family court to grant the requested relief. On September 20, 2004, pursuant to the stipulation of the parties, the family court entered an order re-

placing paragraph D of the Divorce Decree with the following:

> D. *Personal Property.* The court hereby orders the division and distribution of [the] parties' personal property as stated in Defendant's Exhibit BB. . . . Any property not listed in this exhibit is hereby awarded to the party in possession of that property at the time of this decree.

At that point, the Divorce Decree became final for purposes of appeal.

On September 30, 2004, after a hearing on August 13, 2004, the court entered an "Order Regarding Defendant Wailani Luella Camp's Motion to Set Aside Orders Granting Plaintiff's (1) Ex Parte Motion to Order Department of Health, State of Hawaii, to Prepare an Amended Certificate of Death for Gary Edward Camp, Plaintiff Now Deceased; (2) Ex Parte Motion for Appointment of Chief Clerk With Authority to Sign Conveyance Document or, in the Alternative, for Entry of Judgment for Transfer of Title to Personal Representative; and Ex Parte Motion to Correct Court Record With Regard to Divorce Decree (Filed July 16, 2004); and Defendant Wailani Luella Camp's Motion to Amend Divorce Decree to Render It an Appealable Order (Filed August 9, 2004)" that stated, in relevant part:

> 3. Full force and effect shall, therefore, be given to the following orders:
>
> • ORDER GRANTING PLAINTIFF'S EX PARTE MOTION TO ORDER DEPARTMENT OF HEALTH, STATE OF HAWAII, TO PREPARE AN AMENDED CERTIFICATE OF DEATH FOR GARY EDWARD CAMP, PLAINTIFF NOW DECEASED
>
> • ORDER GRANTING PLAINTIFF'S EX PARTE MOTION FOR APPOINTMENT OF CHIEF CLERK WITH AUTHORITY TO SIGN CONVEYANCE DOCUMENT OR, IN THE ALTERNATIVE, FOR ENTRY OF JUDGMENT FOR TRANSFER OF TITLE TO PERSONAL REPRESENTATIVE
>
> • ORDER GRANTING PLAINTIFF'S EX PARTE MOTION TO CORRECT COURT RECORD WITH REGARD TO DIVORCE DECREE FILED JULY 16, 2004 AND DEFENDANT WAILANI

LUELLA CAMP'S MOTION TO AMEND DIVORCE DECREE TO RENDER IT AN APPEALABLE ORDER (FILED AUGUST 9, 2004)

This appeal was assigned to this court on May 4, 2005.

## RELEVANT STATUTES, COURT RULES AND PRECEDENTS

Hawaii Revised Statutes (HRS) § 580–41(1) (1993) provides: "The family court shall decree a divorce from the bond of matrimony upon the application of either party when the court finds: (1) The marriage is irretrievably broken[.]"

HRS § 580–45 (1993) states as follows:

> **Decree.** If after a full hearing, the court is of opinion that a divorce ought to be granted from the bonds of matrimony a decree shall be signed, filed and entered, **which shall take effect from and after such time as may be fixed by the court in the decree.** The court, in its discretion, may waive a hearing on an uncontested divorce complaint and admit proof by affidavit. In case of a decree dissolving the bonds of matrimony, such time so fixed shall not be more than one month from and after the date of the decree.

(Emphasis added.)

HRS § 580–46 (1993) provides:

> **Final judgment; nunc pro tunc entry; validation of certain marriages.** Whenever either party to a divorce action is entitled to a final decree dissolving the bonds of matrimony, but by mistake, negligence, or inadvertence the final decree has not been entered, the court on motion of either party or upon its own motion may cause a final decree to be entered granting the divorce as of the date when the decree could have been entered. Upon the entry of the final decree, the parties to the divorce action shall be deemed to have been restored to the status of single persons as of the date set forth in the final decree, and any marriage of either party after such date shall not be subject to attack on the grounds that the marriage was contracted at a time when the party was

undivorced in the divorce action. The court may cause a final decree to be entered nunc pro tunc as provided in this section even though another final decree may have been entered previously but by mistake, negligence, or inadvertence was not entered as soon as a final decree could have been entered.

HRS § 580–56 (1993) provides, in relevant part:

**Property rights following dissolution of marriage.** (a) Every decree of divorce which does not specifically recite that the final division of the property of the parties is reserved for further hearing, decision, and orders shall finally divide the property of the parties to such action.

(b) Following the entry of a decree of divorce in any matrimonial action in which the final division of the property of the parties to such action is reserved for further hearings, decisions, and orders, notwithstanding the provisions of section 560:2–802, or any other provisions of the law to the contrary, each party to such action shall continue to have all of the rights to and interests in the property of the other party to such action as provided by chapter 533 and chapter 560, or as otherwise provided by law to the same extent he or she would have had such rights or interests if the decree of divorce had not been entered, until the entry of a decree or order finally dividing the property of the parties to such matrimonial action, or as provided in subsection (d) of this section.

. . . .

(d) Following the entry of a decree of divorce, or the entry of a decree or order finally dividing the property of the parties to a matrimonial action if the same is reserved in the decree of divorce, or the elapse of one year after entry of a decree or order reserving the final division of property of the party, a divorced spouse shall not be entitled to dower or curtesy in the former spouse's real estate, or any part thereof, nor to any share of the former spouse's personal estate.

The Hawaiʻi Family Court Rules (2005) provide, in relevant part:

**Rule 54. Judgment; costs.**

(a) **Definition; form.**

"Judgment" as used in these rules includes a decree and any order from which an appeal lies. A judgment shall not contain a recital of pleadings, the report of a master, or the record of prior proceedings.

. . . .

(e) **Effective date.** All judgments and orders shall take effect upon the signing and filing thereof unless otherwise ordered.

. . . .

**Rule 59. New Trials; Reconsideration or Amendment of Judgments and Orders.**

(a) **Grounds.** A new trial may be granted to all or any of the parties and on all or part of the issues for good cause shown. On a motion for a new trial, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law, or make new findings and conclusions, and direct the entry of a new judgment.

. . . .

(d) **On initiative of court.** Not later than 10 days after entry of judgment the court of its own initiative may order a new trial, for any reason for which it might have granted a new trial on motion of a party. After giving the parties notice and an opportunity to be heard on the matter, the court may grant a motion for a new trial, timely served, for a reason not stated in the motion. In either case, the court shall specify in the order the grounds therefor.

(e) **Motion to reconsider, alter or amend a judgment or order.** Except as otherwise provided by HRS section 571–54, a motion to reconsider, alter or amend the judgment or order shall be filed not later than 10 days after entry of the judgment or order . . . .

(f) **Entry of judgment.** Unless otherwise ordered by the court, the filing of the judgment in the office of the clerk constitutes the entry of the judgment, and the

**477**

judgment is not effective before such entry.

The Hawai'i Rules of Appellate Procedure (2005) provides, in relevant part:

**Rule 4. Appeals—When taken.**

**(a) Appeals in civil cases.**

(1) Time and Place of Filing. When a civil appeal is permitted by law, the notice of appeal shall be filed within 30 days after entry of the judgment or appealable order.

The notice of appeal shall be filed with the clerk of the court from which the appeal is taken. If a notice of appeal is mistakenly filed in the supreme court, the appellate clerk shall note on it the date of receipt and shall transmit the notice to the clerk of the court appealed from. The date of receipt by the appellate clerk shall be deemed to be the date the notice of appeal was filed in the court or agency.

(2) Premature Filing of Appeal. In any case in which a notice of appeal has been filed prematurely, such notice shall be considered as filed immediately after the time the judgment becomes final for the purpose of appeal.

The following is a relevant precedent stated by this court:

Hawaii divorce cases involve a maximum of four discrete parts: (1) dissolution of the marriage; (2) child custody, visitation, and support; (3) spousal support; and (4) division and distribution of property and debts. *Black v. Black*, 6 Haw.App. 493, 728 P.2d 1303 (1986). In *Cleveland v. Cleveland*, 57 Haw. 519, 559 P.2d 744 (1977), the Hawaii Supreme Court held that an order which finally decides parts (1) and (4) is final and appealable even if part (2) remains undecided. Although we recommend that, except in exceptionally compelling circumstances, all parts be decided simultaneously and that part (1) not be finally decided prior to a decision on all the other parts, we conclude that an order which finally decides part (1) is final and appealable when decided even if parts (2), (3), and (4) remain undecided; that parts (2), (3), and (4) are each separately final

and appealable as and when they are decided, but only if part (1) has previously or simultaneously been decided; and that if parts (2), (3), and/or (4) have been decided before part (1) has been finally decided, they become final and appealable when part (1) is finally decided.

*Eaton v. Eaton*, 7 Haw.App. 111, 118–19, 748 P.2d 801, 805 (1987) (footnote omitted).

*Aoki v. Aoki*, 105 Hawai'i 403, 404, 98 P.3d 274, 275 (App.2004).

## ARGUMENT

■ Wailani's opening brief cites to HRS §§ 580–45 and –46 and sundry non-Hawai'i precedents and authorities in support of the common law rule that the family court was not authorized to enter a divorce decree after Gary's death. For example, her opening brief notes that

an action for divorce is a purely personal action which abates upon the death of either party." Turner, B. R., *Equitable Distribution of Property*, Section 3.01 at 51 (2d ed.1994), *citing Parkhurst v. Parkhurst*, 799 S.W.2d 159, 161 (Mo.Ct.App. 1990) ("Husband's death prior to the entry of a decree by the trial court caused the immediate abatement and final termination of the dissolution proceeding.")

The facts of this case do not satisfy the requirements of HRS § 580–46, and JeanPR does not argue to the contrary.

JeanPR's answering brief cites sundry non-Hawai'i precedents and authorities in support of JeanPR's contention that the "Ministerial Act Exception" applies. This exception is described as follows: "If the divorce decree has not yet been entered at the time of death, but the court has made all of the necessary substantive decisions, and the only tasks remaining before entry of the decree are purely ministerial, the majority rule is that the divorce case does not abate." Turner, B. R., *Equitable Distribution of Property*, (2d ed.1994), 2004 Supplement at 32.

JeanPR's answering brief cites *Vessels v. Vessels*, 530 S.W.2d 71 (Tenn.1975), for the following rule:

Rule 58.02 of the Tennessee Rules of Civil Procedure provides that "[t]he filing with the clerk of a judgment, signed by the judge, constitutes the entry of said judgment, and, *unless the court otherwise directs,* no judgment shall be effective for any purpose until the entry of same ..." (emphasis supplied) It is noted in the comments of the advisory committee that Rule 58.02 is designed to make uniform across the state the procedure for entry of judgment and to make certain the effective date of a judgment.

In the case *sub judice* there is no order specifically stating the decree of divorce is to be effective at a date other than the date the decree was filed with the clerk after being signed by the trial judge. However, there is an order in the record clearly indicating the trial judge intended the divorce decree to be effective as of the date it was pronounced and that he believed he had done everything necessary to make the decree effective as of that date in entering "a notation on the file of the case that the divorce was granted and the property was awarded on the 21st day of June, 1974." *Cf. Rush v. Rush,* 97 Tenn. 279, 37 S.W. 13 (1896); *McCown v. Quillin,* 48 Tenn.App. 162, 344 S.W.2d 576 (1960). This expressed intent, though bottomed on the wrong premise, in our opinion was a direction by the trial court that the decree of divorce be effective as of June 21, 1974. Accordingly, we affirm the trial judge's action in overruling the motion to set aside the decree of divorce.

The reply brief responds that

none of Turner's cases (or Gary's either) address a statute like *HRS* Section 580–45, which provides "a decree shall be signed, filed and entered" and "shall take effect from and after such time as may be fixed by the court in the decree." The only exception to Hawaii's final decree requirement is described in *HRS* Section 580–46, which permits the entry of a *nunc pro tunc* divorce decree when "a divorce action is entitled to a final decree" but "by mistake, negligence, or inadvertence the final decree has not been entered[.]" *HRS* Section 580–46. [JeanPR] requested relief

under this statute here, but Judge Young found that none of these three exceptions applied.

Wailani's reply brief notes that the October 10, 2003 Decision and Order "declared, in accordance with HRS Section 580–45, that 'a divorce from the bonds of matrimony on the grounds that the marriage is irretrievably broken, shall be granted to [Gary] *effective upon the signing and filing of a Divorce Decree to be prepared by [Gary].*'" (Emphasis in original.)

Wailani's reply brief also notes that certain parts of the Divorce Decree are substantially different from the Decision and Order because changes were made in the personal property provisions to achieve finality after this appeal was filed. It argues that "[e]ven if the 'ministerial act exception' applied, the family court did not make 'all the necessary substantive decisions' before Gary died."

## DISCUSSION

■ As noted above, in the situation where "the court has made all of the necessary substantive decisions, and the only tasks remaining before entry of the decree are purely ministerial[,]" the Ministerial Act Exception permits the appellate court to conclude that the judgment subsequently entered is entered as of the date the court has made all of the necessary substantive decisions notwithstanding the fact that the judgment subsequently entered does not state that it is effective prior to its entry. Thus, in *Vessels v. Vessels,* the Tennessee case cited above, the fact that the trial judge entered "a notation on the file of the case that the divorce was granted and the property was awarded on the 21st day of June, 1974" permitted the appellate court to conclude that the divorce occurred on June 21, 1974, notwithstanding the fact that the decree subsequently entered did not indicate that it was "effective at a date other than the date the decree was filed with the clerk after being signed by the trial judge."

As noted above, the family court's January 21, 2004 Decision and Order states, in relevant part:

Here, the trial court's intention is very much detailed in its trial Decision And Order filed October 17[sic], 2003.

Thus, this court finds that a Decree of Absolute Divorce is a mere formality to its Decision and Order filed October 17[sic], 2003, and accordingly, Gary's death on October 17, 2003 occurred subsequent to actual finality of the divorce action.

This is not a finding of fact. It is the following two conclusions of law: (1) the October 10, 2003 Decision and Order states the trial court's intention that the decree terminating the marriage of the parties shall be effective on October 10, 2003, and (2) the decree terminating the marriage of the parties was effective when the October 10, 2003 Decision and Order was entered.

Conclusion "(1)" is *wrong* because the October 10, 2003 Decision and Order states that "a divorce, from the bonds of matrimony on the grounds that the marriage is irretrievably broken, shall be granted to Plaintiff **effective upon the signing and filing of a Divorce Decree** to be prepared by the Plaintiff." (Emphasis added.)

The validity of conclusion "(2)" requires an examination of the February 24, 2004 Divorce Decree in the light of the applicable statutes, rules and precedent. Did HRS § 580–45 permit the court to have "otherwise ordered" the February 24, 2004 Divorce Decree to "take effect" prior to October 17, 2003? In light of the relevant legislative history, we conclude that the answer is no.

HRS § 580–45 was enacted in 1870. Since that time, it has been amended fourteen times.[7] After comparing the various amendments to the statute since 1870, it appears the relevant parts of HRS § 580–45 are similar to parts enacted in 1911. Prior to 1911, the statute read, "If after a full hearing, the judge shall be of opinion that a divorce ought to be granted, either from the bonds of matrimony or from bed and board, an absolute

decree shall be entered." Revised Laws of the Territory of Hawaii (RLH) § 2235 (1905). In 1911, the statute was amended by House Bill (H.B.) 158, signed into law as Act 136, to read as follows:

> [RLH] Section 2235. *Decree.* If, after a full hearing, the court or judge shall be of opinion that a divorce ought to be granted, either from the bonds of matrimony or from bed and board, a decree shall be signed, filed and entered, which shall take effect from and after such time as may be fixed by the court or judge in such decree, but in case of a decree dissolving the bonds of matrimony, such time so fixed shall not be more than one month from and after the date of said decree.

1911 Laws of the Territory of Hawaii Act 136, § 1 at 198 (quotation marks omitted). While the statute has been subject to numerous amendments since 1911, the language at issue has remained in substantially similar form. To aid in the interpretation of the ambiguous phrase "from and after such time"[8] in the current version of HRS § 580–45, it is therefore necessary to examine the legislative history of the 1911 amendments.

The Sixth Territorial Legislature evinced a policy disfavoring "hasty" divorces. *See* Hse. Stand. Comm. Rep. No. 249, in 1911 House Journal, at 548. H.B. 158, which was enacted as Act 136, and codified as what is now HRS § 580–45, was intended to discourage divorces by requiring a certain period of time to elapse after the entry of the divorce decree and prior to the effective date of the divorce. The House Judiciary Committee stated:

> The purpose of this Act is to prevent hasty divorces. The provision that in case of a decree dissolving the bonds of matrimony a certain amount of time shall elapse before the decree becomes final, has worked very successfully in other parts of

---

**7.** The text of HRS § 580–45 was amended in 1878, 1903, 1911, 1931, 1949, 1957, 1965, 1967, 1969, 1970, 1971, 1972, 1973, and 1989.

**8.** The phrase "from and after such time as may be fixed by the court or judge in such decree" could mean "after a full hearing" or after a decree is "signed, filed and entered[.]" The fact

that issues in divorce cases are now decided on the basis of the situation on the date of the conclusion of the evidentiary part of the trial (DOCOEPOT) supports the view that the termination of the marriage could be made effective as of the DOCOEPOT.

the United States, and is in line with modern legislation.

*Id.* The Senate Judiciary Committee added:

This bill seeks to add to the provisions of our present statute a clause giving the court or judge granting a divorce the power to fix the time when the decree shall take effect, limiting his discretion in this regard so far as divorce from the bonds of matrimony are concerned to not more than one month from and after the date of the decree.

Sen. Stand. Comm. Rep. No. 297, in 1911 Senate Journal, at 948–49. These reports indicate that the legislature wished to (1) discourage "hasty" divorces by permitting courts to enter decrees that would take effect at a later date and (2) limit the discretion of the courts in this regard to a one month period "from and after" the date of the entry of the decree.

When the relevant terms of HRS § 580–45 are construed in light of its legislative history, they indicate that courts have discretion in fixing the effective date of the divorce decree but that this discretion is limited to a one month period commencing the date of the entry of the decree. Consequently, it does not authorize courts to order the divorce decree to be effective prior to the date of its entry.

In the instant case, did the court order the divorce decree to be effective prior to its entry? The answer is no.

In construing the terms of a divorce decree, the determinative factor is the intent of the court as gathered from the decree and other evidence. *Bowman v. Bennett,* 250 N.W.2d 47, 50 (Iowa 1977); *Hill v. Hill,* 3 Wash.App. 783, 477 P.2d 931 (1970). A judgment or decree like any other written instrument is to be construed reasonably and as a whole, *Smith v. Smith,* 56 Haw. 295, 301, 535 P.2d 1109, 1114 (1975), and effect must be given not only to that which is expressed, but also to that which is unavoidably and necessarily implied in the judgment or decree. *Pope v. Pope,* 7 Ill.App.3d 935, 289 N.E.2d 9 (1972).

*Anderson v. Anderson,* 59 Haw. 575, 584–85, 585 P.2d 938, 944, *reh'g denied,* 59 Haw. 667 (1978).

The February 24, 2004 Divorce Decree states, in relevant part:

IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

The material allegations of the Complaint for Divorce have been proved and, therefore, Plaintiff shall be entitled to a divorce from the bonds of matrimony on the grounds that the marriage is irretrievably broken, and this Court has jurisdiction to enter this Divorce Decree.

It does not state that it is effective on a date other than the date of its entry.

## CONCLUSION

Accordingly, we remand for an order (1) dismissing this divorce case effective October 17, 2003, (2) vacating all orders and decrees entered thereafter, and (3) granting such other relief as may be necessary to effectuate the consequences of this opinion.