260 P.3d 1126

**Bonnie MacLeod KAKINAMI,
Respondent/Plaintiff–
Appellee,**

v.

**Aaron K.H. KAKINAMI,
Petitioner/Defendant–
Appellant.**

No. SCWC–28977.

Supreme Court of Hawaiʻi.

Aug. 24, 2011.

Peter Van Name Esser, for petitioner/defendant-appellant.

Robert M. Harris (Marianita Lopez (Saccoccio & Lopez) with him on the brief), for respondent/plaintiff-appellee.

RECKTENWALD, C.J., NAKAYAMA, ACOBA, DUFFY, and McKENNA JJ.

Opinion of the Court by DUFFY, J.

Petitioner/Defendant–Appellant Aaron K.H. Kakinami (Aaron) filed a timely application for a writ of certiorari (Application), urging this court to review the Intermediate Court of Appeal's (ICA) March 30, 2011 judgment on appeal in support of its February 28, 2011 summary disposition order (SDO), which affirmed the Family Court of the Fifth Circuit's (family court) October 1, 2007 decree granting absolute divorce.[1]

Aaron's Application presents the following questions:

A. Did the [ICA] commit grave error when it changed the burden of proof for bifurcation in divorce cases from exceptionally compelling circumstances to good cause, thereby opening the floodgates for bifurcated divorce trials, in derogation of both ICA and Supreme Court precedent?
B. Did the [ICA] commit grave error when it affirmed an arbitrary and unnecessary bifurcation of a Kauai divorce case,

where the family court utterly failed to indentify [sic] exceptionally compelling circumstances or good cause?

We accepted the Application on August 1, 2011 in order to clarify that the statutory requirement of "good cause" for bifurcation of a divorce case set forth in Hawai'i Revised Statutes (HRS) § 580–47(a) has not been abrogated. We hold that the family court may bifurcate divorce proceedings upon a finding of good cause. In this case, the family court's finding of good cause to bifurcate the divorce proceedings was supported by evidence in the record and was not an abuse of discretion.

## I. BACKGROUND

This case arises from the divorce proceedings between Aaron and Respondent/Plaintiff–Appellee Bonnie MacLeod Kakinami (Bonnie).

### A. Procedural History

Bonnie filed a complaint for divorce on March 9, 2006, alleging that the marriage was irretrievably broken. In his answer, Aaron admitted that the marriage was irretrievably broken.

Trial was originally set for August 10, 2007. Aaron moved to continue the trial, arguing that he needed more time to complete discovery because third parties had been slow to respond to his discovery requests. During the hearing on the motion to continue, the family court had the following discussion with Bonnie's counsel:

I think the bottom line is that [Aaron's counsel] is seeking a continuance. And it appears that, for reasons which I certainly don't understand, his subpoenas have been served, the responses have been slow in coming. And I think the last time we spoke ... I had asked whether your client wanted to be divorced, we would bifurcate the division of assets and debts to a later time. That is still an option that is available to her if she chooses to do so .... Because she may, just from a psychological emotional standpoint, just want to get di-

1. The Honorable Calvin K. Murashige presided.

vorced. . . . And that would certainly make her a little more tolerable of the delays that [Aaron's counsel] is encountering in getting the records.

The family court granted the continuance and reset the trial for December 7, 2007. The court also twice reminded Bonnie that she could file a motion to bifurcate if she wanted to obtain a divorce decree prior to the trial date.

Bonnie filed a motion to bifurcate on August 15, 2007, in which she argued, *inter alia,* as follows:

. . .

3. It has been 18 months since Plaintiff filed her complaint for divorce.

4. It has been close to 12 months since Plaintiff filed her Motion to Set.

5. Because of extensive discovery and alleged lagging discovery compliance by third parties, this matter has been in litigation for a year and a half.

6. Plaintiff desires to be divorced from Defendant.

7. Plaintiff requests that this court bifurcate the dissolution of her marriage from the final division of certain property and certain debts until the evidentiary portion of the divorce trial is concluded, presently scheduled for December 7, 2007.

. . .

Bonnie also requested the division of certain items of real and personal property prior to the trial.

The family court held a hearing on Bonnie's motion to bifurcate on August 27, 2007, and granted her request. During the same hearing, the court heard testimony from Bonnie regarding the dissolution of marriage. The court found that Bonnie had proven the material allegations of the complaint and was entitled to a divorce. The effective date of the decree granting absolute divorce was October 1, 2007. The decree: (1) dissolved Aaron and Bonnie's marriage; (2) terminated Aaron from Bonnie's medical insurance coverage; (3) allowed each party to change beneficiary designations on his or her insurance policies and retirement plans; (4) assigned possession of Aaron and Bonnie's vehicles; and (5) awarded the marital home to Aaron,

provided that Aaron buy out Bonnie's interest. The family court reserved the division of property and debts not decided by the divorce decree until the December 7, 2007 trial.

On March 11, 2008, the family court entered its findings of fact and conclusions of law. The court made the following findings of fact:

. . .

3. The parties became embroiled in a series of discovery disputes through Defendant's Motions to Compel Discovery against Plaintiff and third parties and through Plaintiff's Motion for Protective Order.

4. The Court intervened on a number of occasions in order to resolve the discovery disputes.

5. Per Memorandum of Family Court . . . the trial of this matter was scheduled for August 10, 2007. . . .

6. On July, 10, 2007 Defendant filed a Motion to Continue Trial . . .

. . .

13. Plaintiff objected to the motion for continuance as the divorce proceedings at point [sic] had taken almost a year and a half and the personal attack and viciousness of the proceedings had taken an emotional toll on Plaintiff.

. . .

17. The Court granted Defendant's motion to continue the trial. The trial date was re-set to December 7, 2007. . . .

18. Plaintiff filed a Motion to Bifurcate Divorce on August 15, 2007.

. . .

21. As of August 27, 2007 the parties had been in litigation for approximately 18 months.

22. On August 27, 2007 the court granted Plaintiff's motion to bifurcate the divorce.

23. On August 27, 2007 Plaintiff made her prima facie case for divorce.

24. On August 27, 2007 the Court granted Plaintiff's complaint for divorce from Defendant, effective prospectively on October 1, 2007. At that hearing the court also made certain orders regarding division of property and debts.

. . .

26. On September 27, 2007 the order granting Plaintiff's Motion to Bifurcate was entered.

27. On October 1, 2007 the divorce decree was entered.

. . .

29. From the outset of this litigation, the parties have been extremely litigious.

30. Accusations against Plaintiff and/or her counsel by Defendant and his first counsel . . . fueled by charges of wrongdoing and bad faith left Plaintiff emotionally drained[.]

31. The litigiousness appeared to be unnecessarily dissipating the estate of the parties.

32. Of the four discrete parts of a divorce, the only contested issue was the division of property and debts. As to those issues, the only contested issue at the time of the bifurcation hearing was division of the investment assets titled solely in Plaintiff's name.

. . .

3[7]. The parties are permitted to name their designated beneficiary on their insurance and retirement plans.

38. Defendant is entitled to medical insurance coverage under the COBRA plan for 36 months after the entry of the divorce decree, provided he makes the monthly premiums.

39. The monthly premiums are approximately $272.00 per month.

40. Defendant is an attorney licensed to practice law in the state of Hawaii.

41. Defendant has the financial ability to make those monthly payments.

42. Defendant is already paying his share of the medical insurance premiums under Plaintiff's plan.

. . .

45. Defendant has not been prejudiced by the bifurcation of the divorce.

The family court's conclusions of law stated:

1. The Court has jurisdiction to bifurcate the divorce pursuant to *HRS* 580–56 and for good cause.

2. The standard for granting or denying a motion to bifurcate is abuse of discretion.

3. Based on the totality of the evidence, the files and the records herein, the Court has good cause to grant Plaintiff's motion to bifurcate the divorce and reserve the division of property and debt for the trial on December 7, 2007.

4. Defendant has not been jeopardized by the bifurcation.

B. *Appeal to the ICA*

Aaron filed his opening brief with the ICA on August 5, 2008, in which he challenged a number of the family court's findings of fact and conclusions of law.

In its SDO, the ICA stated that HRS § 580–47(a) allows the family court, upon entering a divorce decree, to reserve jurisdiction over property division and distribution upon a finding of good cause. SDO at 3. The ICA noted that in *Eaton v. Eaton*, 7 Haw. App. 111, 748 P.2d 801 (1987), it stated that "we *recommend* that, except in exceptionally compelling circumstances, all parts [of a divorce case] be decided simultaneously. . . ." SDO at 3 (quoting *Eaton*, 7 Haw.App. at 118, 748 P.2d at 805) (emphasis and brackets in original). The ICA, however, concluded that the *Eaton* court's recommendation did not modify the good cause requirement established by HRS § 580–47(a). *Id.* at 3–4.

The ICA further concluded that evidence in the record supported the family court's finding that good cause existed to bifurcate the proceedings. *Id.* at 6. Thus, the family court did not abuse its discretion by bifurcating the proceedings and entering the October 1, 2007 divorce decree. *Id.*

Aaron filed his Application on June 27, 2011. Bonnie filed a response on July 12, 2011.

II. *STANDARDS OF REVIEW*

A. *Family Court Decisions*

Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion. Thus, we will not disturb the family

court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

*Fisher v. Fisher*, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (quoting *In re Doe*, 95 Hawai'i 183, 189–90, 20 P.3d 616, 622–23 (2001)).

B. *Family Court's Findings Of Fact And Conclusions Of Law*

 The family court's [findings of fact (FOFs) ] are reviewed on appeal under the "clearly erroneous" standard. A FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

On the other hand, the family court's [conclusions of law (COLs) ] are reviewed on appeal *de novo*, under the right/wrong standard. COLs, consequently, are [ ]not binding upon an appellate court and are freely reviewable for their correctness.

*Id.* (quoting *In re Doe*, 95 Hawai'i at 190, 20 P.3d at 623) (brackets added).

### III. *DISCUSSION*

Aaron argues that the ICA erred by concluding that the family court need only find good cause, rather than "exceptionally compelling circumstances", to bifurcate divorce proceedings. Aaron further argues that, even if good cause is the appropriate standard, the record does not support a finding of good cause to bifurcate the proceedings in this case.

A. *The Family Court Was Correct To Apply The Good Cause Standard For Bifurcating The Divorce Proceedings.*

The family court entered the divorce decree on October 1, 2007, which dissolved Aaron and Bonnie's marriage and divided a portion of their marital property. The court reserved jurisdiction to divide the remainder of Aaron and Bonnie's marital property in a trial scheduled for December 7, 2007.

HRS § 580–47(a), which governs the family court's ability to bifurcate divorce proceedings, states in relevant part:

*Upon granting a divorce,* or thereafter if, in addition to the powers granted in subsections (c) and (d), *jurisdiction of those matters is reserved under the decree by agreement of both parties or by order of court after finding that* **good cause** *exists,* the court may make any further orders as shall appear just and equitable (1) compelling the parties or either of them to provide for the support, maintenance, and education of the children of the parties; (2) compelling either party to provide for the support and maintenance of the other party; (3) finally dividing and distributing the estate of the parties, real, personal, or mixed, whether community, joint, or separate; and (4) allocating, as between the parties, the responsibility for the payment of the debts of the parties whether community, joint, or separate, and the attorney's fees, costs, and expenses incurred by each party by reason of the divorce.

HRS § 580–47(a) (2006) (emphases added).[2]

Aaron acknowledges that HRS § 580–47(a) recites a good cause standard for bifurcation, but argues that numerous ICA cases have added a stricter standard. Aaron cites the following passage from *Eaton* in support of his argument:

Hawaii divorce cases involve a maximum of four discrete parts: (1) dissolution of the marriage; (2) child custody, visitation, and support; (3) spousal support; and (4) division and distribution of property and debts. *Black v. Black*, 6 Haw.App. [493], 728 P.2d 1303 (1986). In *Cleveland v. Cleveland*, 57 Haw. 519, 559 P.2d 744 (1977), the Hawaii Supreme Court held that an order which finally decides parts (1) and (4) is final and appealable even if part (2) remains undecided. Although *we recommend that, except in exceptionally*

---

**2.** HRS § 580–47(a) was recently amended; however, the amendments do not pertain to the standard for bifurcating divorce proceedings. *See* 2011 Haw. Sess. L. Act 140 § 2.

*compelling circumstances, all parts be decided simultaneously and that part (1) not be finally decided prior to a decision on all the other parts,*[3] we conclude that an order which finally decides part (1) is final and appealable when decided even if parts (2), (3), and (4) remain undecided; that parts (2), (3), and (4) are each separately final and appealable as and when they are decided, but only if part (1) has previously or simultaneously been decided; and that if parts (2), (3), and/or (4) have been decided before part (1) has been finally decided, they become final and appealable when part (1) is finally decided.

*Eaton,* 7 Haw.App. at 118–19, 748 P.2d at 805 (emphasis added, footnote omitted); *see also Aoki v. Aoki,* 105 Hawai'i 403, 404, 98 P.3d 274, 275 (App.2004) (quoting *Eaton* ); *Camp v. Camp,* 109 Hawai'i 469, 477, 128 P.3d 351, 359 (App.2006) (same); *Ferreira v. Ferreira,* 112 Hawai'i 225, 229, 145 P.3d 768, 772 (App. 2006) (same).

In *Eaton,* the family court had ordered the dissolution of marriage and spousal support, but had not "fully and finally divided and distributed all of the property and debts of the Plaintiff and the Defendant over which it had jurisdiction." *Eaton,* 7 Haw.App. at 119, 748 P.2d at 805. Because the family court's decisions and orders regarding the division of property and debts were not final, the ICA *sua sponte* concluded that it did not have jurisdiction to review them. *Id.* at 118–19, 748 P.2d at 805–06.

The *Eaton* court's decision did not address whether bifurcation was appropriate.[4] Rather, its analysis focused on whether it had appellate jurisdiction to review the family court's non-final property division decisions. Thus, its "recommendation" that dissolution of marriage should not be finally decided prior to a decision on all other parts of a divorce case "except in especially compelling circumstances" is dictum. *See* Black's Law Dictionary 1177 (9th ed. 2009) (defining "obi-

ter dictum" as "[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive).").

Likewise, the decisions in *Ferreira, Aoki,* and *Camp* were not decided on the issue of bifurcation, despite quoting the "exceptionally compelling circumstances" language in *Eaton.* *See Ferreira,* 112 Hawai'i at 229–231, 145 P.3d at 772–774 (concluding that because the family court's amended decree did not specify the dollar amount of child support to be paid or provide for the division and distribution of all marital property, the amended decree was not final and appealable with respect to these issues); *see also Aoki,* 105 Hawai'i at 413–14, 98 P.3d at 284–85 (concluding that there was no appellate jurisdiction over an order dividing marital property and debts because that order promised future action by the family court and was therefore not final); *Camp,* 109 Hawai'i at 469–80, 128 P.3d at 351–62 (concluding that the family court did not have jurisdiction to enter a divorce decree where husband died prior to entry of the divorce decree, but after the family court entered a decision and order finding that the husband was entitled to a divorce.)

■ In the present case, the ICA, citing HRS § 580–47(a), concluded that "[t]he Family Court may bifurcate dissolution and final property distribution upon agreement of the parties or a finding of good cause." SDO at 3. The ICA further concluded that

> *Eaton* evinces a recommendation and not a new standard. It does not expressly or implicitly modify the "good cause" requirement established by statute. Aaron has not cited, and we have not found, any cases adopting the "exceptionally compelling circumstances" language as a new standard, separate from the good cause requirement. We therefore conclude that the Family

---

3. The ICA further noted that "[i]n light of *Boulton v. Boulton,* 69 Haw. 1, 730 P.2d 338 (1986), our recommendation applies especially to part (4)." *Eaton,* 7 Haw.App. at 118 n. 8, 748 P.2d at 805 n. 8. In *Boulton,* we concluded that, pursuant to HRS § 580–56(d), a divorced spouse shall not be entitled to any share of the former spouse's personal estate following the elapse of

one-year after entry of a decree reserving the final distribution of property. *Boulton,* 69 Haw. at 3–4, 730 P.2d at 339.

4. The *Eaton* opinion does not cite to the good cause standard in HRS § 580–47(a).

Court did not err in failing to find exceptionally compelling circumstances.

*Id.* at 3–4. Based on the foregoing analysis, we agree with the ICA's conclusion that good cause is the proper standard for bifurcating the dissolution of marriage from the remaining parts of a divorce case. The "exceptionably compelling circumstances" recommendation in *Eaton* does not supplant the good cause standard established by HRS § 580–47(a).

Aaron further argues that this court adopted the "exceptionally compelling circumstances" standard in *Johnson v. Murakami*, No. 30409, 2010 WL 1697182 (April 26, 2010). In *Johnson*, the family court denied the petitioner's motion to bifurcate the proceedings and grant an immediate divorce. *Johnson*, 2010 WL 1697182 at *1. In our order granting the petition for writ of mandamus, we found that the petitioner had presented "clear and convincing evidence that [she was] terminally ill and that [the] divorce action could be abated by [her] death." *Id.* We further stated that

> [t]he possible abatement of the divorce action constitutes: (1) good cause under HRS § 580–47(a) (2006) for granting petitioner a divorce and reserving jurisdiction over all other matters; (2) *an exceptionally compelling circumstance for dissolving petitioner's marriage before deciding all other parts of the divorce; see Camp v. Camp,* 109 Hawai'i 469, 477, 128 P.2d [P.3d] 351, 359 (App.2006); and (3) a basis for bifurcating petitioner's divorce action under HFCR [Hawai'i Family Court Rules] 42(b) to avoid prejudice.

*Id.* (emphasis added). Aaron argues that, absent this court's finding of exceptionally compelling circumstances, bifurcation would not have been ordered. We disagree.

Our citation to *Camp* is instructive. In *Camp,* one of the parties died after the family court entered a decision and order stating that "a divorce . . . shall be granted to Plaintiff effective upon the signing and filing of a Divorce Decree to be prepared by Plaintiff[,]" but before the family court entered the decree of absolute divorce. *Camp,* 109 Hawai'i at 469–75, 128 P.3d at 351–57. The ICA concluded that the party's death extinguished the family court's jurisdiction to enter the divorce decree, and that the divorce case should be dismissed. *Id.* at 478–80, 128 P.3d at 360–62. Thus, the clear and convincing evidence in *Johnson* that the petitioner was terminally ill and that the divorce action could be abated by petitioner's death was "an exceptionally compelling circumstance" to bifurcate the proceedings. However, the reference to "exceptionally compelling circumstance[s]" in *Johnson* was not intended to replace the good cause standard for bifurcation mandated by HRS § 580–47(a).

Aaron further argues that "a majority of other states similarly disfavors bifurcation and restricts its use to unusual or exceptional circumstances." As discussed above, HRS § 580–47(a) states that good cause is the standard for bifurcation in divorce cases. Thus, the fact that other states have adopted a more stringent standard is irrelevant.

■ Finally, Aaron argues that "[s]trong policy reasons support requiring family courts to decide all four parts [of a divorce case] at the same time[ ]" absent exceptional circumstances. Such reasons include avoiding "piecemeal divorce trials", which could "result in multiple appeals, clogging both trial calendars and appellate dockets." Though there may be valid policy reasons for imposing a stricter standard for bifurcation in divorce proceedings, HRS § 580–47(a) states that the appropriate standard to be applied is good cause.[5] *See* HRS § 580–47(a). As the

---

**5.** The good cause standard itself requires a substantial reason for the family court to order bifurcation. *Cf. Doe v. Doe,* 98 Hawai'i 144, 154, 44 P.3d 1085, 1095 (2002) ("As a general rule, 'good cause' means a substantial reason[.]" (quoting *State v. Estencion,* 63 Haw. 264, 267, 625 P.2d 1040, 1042–43 (1981))). Regarding the good cause standard of HRS § 580–47(a), the Senate Judiciary Committee stated:

> Your committee amended the bill to change the standard upon which the court may order the reservation of issues from "appropriate circumstances" to "good cause." *Since the reservation of issues should be the exception rather than the rule,* the court should carefully consider its necessity based on the circumstances of the case. This language will so direct the court.

ICA correctly stated, "[i]t is not the role of this court to alter a statutory requirement in order to effect policy considerations that are vested in the legislature." SDO at 4 (citing *TMJ Hawaii, Inc. v. Nippon Trust Bank,* 113 Hawai'i 373, 384 n. 6, 153 P.3d 444, 455 n. 6 (2007)).

Accordingly, the family court was correct to apply the good cause standard in deciding whether to bifurcate the dissolution of Aaron and Bonnie's marriage from the remaining parts of the divorce proceeding.[6] *See* HRS § 580–47(a); *see also Fisher,* 111 Hawai'i at 46, 137 P.3d at 360.

B. *The Family Court Did Not Abuse Its Discretion By Finding That Good Cause Existed To Bifurcate The Proceedings In This Case.*

 Aaron argues that, "[r]egardless of whether good cause or exceptional compelling circumstances justify bifurcation, Bonnie did not show, and the court did not find, any reasons to have separate dissolution and property trials in this case." Specifically, Aaron argues that the following factors weigh against a finding of good cause: (1) bifurcation did nothing to speed resolution of the case or reduce its "litigiousness"; (2) the emotional welfare of one of the parties may not be the basis for a finding of good cause because emotional difficulties are present in every divorce case; (3) "[g]ranting bifurcation because Aaron did not show prejudice improperly shifts the burden to him to show there was no reason *not* to order bifurcation, which is contrary to law[;]" and (4) "Bonnie did not argue, and [the family court] did not find, that bifurcation was necessary to avoid real or imagined injury."

The family court made the following findings of fact relevant to this discussion:

. . .

3. The parties became embroiled in a series of discovery disputes through Defendant's Motions to Compel Discovery

against Plaintiff and third parties and through Plaintiff's Motion for Protective Order.

4. The Court intervened on a number of occasions in order to resolve the discovery disputes.

5. Per Memorandum of Family Court . . . the trial of this matter was scheduled for August 10, 2007 . . . .

6. On July, 10, 2007 Defendant filed a Motion to Continue Trial . . .

. . .

13. Plaintiff objected to the motion for continuance as the divorce proceedings at point [sic] had taken almost a year and a half and the personal attack and viciousness of the proceedings had taken an emotional toll on Plaintiff.

. . .

17. The Court granted Defendant's motion to continue the trial. The trial date was re-set to December 7, 2007 . . . .

18. Plaintiff filed a Motion to Bifurcate Divorce on August 15, 2007.

. . .

21. As of August 27, 2007 the parties had been in litigation for approximately 18 months.

22. On August 27, 2007 the court granted Plaintiff's motion to bifurcate the divorce.

23. On August 27, 2007 Plaintiff made her prima facie case for divorce.

24. On August 27, 2007 the Court granted Plaintiff's complaint for divorce from Defendant, effective prospectively on October 1, 2007. At that hearing the court also made certain orders regarding division of property and debts.

. . .

26. On September 27, 2007 the order granting Plaintiff's Motion to Bifurcate was entered.

27. On October 1, 2007 the divorce decree was entered.

Stand. Com. Rep. No. 470, in 1983 Senate Journal, at 1246 (emphasis added).

6. The family court concluded that it had "jurisdiction to bifurcate the divorce pursuant to *HRS* 580–56 and for good cause." This is an incorrect statement of law because the power to bifur-

cate the dissolution of marriage from the remaining parts of a divorce proceeding is governed by HRS § 580–47(a). *See* HRS § 580–47(a). However, as discussed above, good cause is the correct standard governing bifurcation. *Id.*

. . .

29. From the outset of this litigation, the parties have been extremely litigious.

30. Accusations against Plaintiff and/or her counsel by Defendant and his first counsel . . . fueled by charges of wrongdoing and bad faith left Plaintiff emotionally drained[.]

31. The litigiousness appeared to be unnecessarily dissipating the estate of the parties.

32. Of the four discrete parts of a divorce, the only contested issue was the division of property and debts. As to those issues, the only contested issue at the time of the bifurcation hearing was division of the investment assets titled solely in Plaintiff's name.

. . .

3[7]. The parties are permitted to name their designated beneficiary on their insurance and retirement plans.

38. Defendant is entitled to medical insurance coverage under the COBRA plan for 36 months after the entry of the divorce decree, provided he makes the monthly premiums.

39. The monthly premiums are approximately $272.00 per month.

40. Defendant is an attorney licensed to practice law in the state of Hawaii.

41. Defendant has the financial ability to make those monthly payments.

42. Defendant is already paying his share of the medical insurance premiums under Plaintiff's plan.

. . .

45. Defendant has not been prejudiced by the bifurcation of the divorce.

These findings are supported by substantial evidence.

The record shows numerous discovery disputes. These disputes contained allegations of bad faith by Aaron against Bonnie, including allegations that Bonnie destroyed or deliberately withheld documents, and committed fraud on the court.

Though the trial was originally set for August 10, 2007, Aaron moved to continue the trial based on these discovery disputes. The family court granted the continuance and reset the trial for December 7, 2007. When the trial court heard Bonnie's motion to bifurcate on August 27, 2007, the divorce proceedings had lasted nearly a year and a half.

When asked why she filed for divorce, Bonnie testified that "[o]ur marriage is over emotionally, physically, mentally. It's over." Aaron admitted in his answer to Bonnie's complaint for divorce that the marriage was irretrievably broken. In his Application, Aaron further admits that "[b]ecause both parties wished to divorce, the couple's two children were grown, and neither requested alimony, the only dispute between them involved property division and distribution."

During the bifurcation hearing, Aaron argued that he would be prejudiced by immediate entry of the divorce decree because he would be terminated from Bonnie's health insurance. The family court found that

at some point in time, whether the divorce is granted today, tomorrow, next month, next year, [Aaron], upon divorce, would be responsible for his own insurance, could no longer be carried under [Bonnie's] coverage.

The court further found that Aaron was entitled to keep his medical coverage for 36 months under the Consolidated Omnibus Reconciliation Act (COBRA) following entry of the divorce decree, provided he paid the monthly premiums. The court found that, based on the fact that Aaron had previously paid the amount of the premiums to Bonnie, and that he was a licensed attorney, Aaron had the financial ability to make the monthly COBRA payments. Thus, Aaron would not be prejudiced by bifurcation and entry of the divorce decree.[7]

---

7. Before the ICA, Aaron also argued that the family court's decision to divide some of the marital property in the bifurcation order was prejudicial because it diminished the value of his marital property within Bonnie's control. The

ICA found that the family court had considered whether Aaron's economic interests would be prejudiced by the bifurcation, stating that

[t]he divorce decree protected Aaron's interests: it placed Bonnie's share of the marital

Contrary to Aaron's argument, the family court did not find that good cause existed to bifurcate the proceedings solely because of the absence of prejudice to Aaron. Rather, the family court considered prejudice to Aaron in addition to above-cited factors that supported a finding of good cause.

Based on the evidence in the record, the family court's findings of fact were not clearly erroneous. *Fisher,* 111 Hawai'i at 46, 137 P.3d at 360. Accordingly, the family court did not abuse its discretion in finding that good cause existed to bifurcate the proceedings and enter the October 1, 2007 decree granting absolute divorce. *Id.*

## IV. *CONCLUSION*

Based on the foregoing analysis, we conclude that the ICA was correct to affirm the family court's entry of the October 1, 2007 decree granting absolute divorce.

residence in escrow pending final property distribution and retained jurisdiction to enter injunctive relief enjoining any improper dissipation of the marital estate.

SDO at 5.