**Electronically Filed
Supreme Court
SCWC-18-0000704
28-JAN-2022
07:47 AM
Dkt. 9 MO**

SCWC-18-0000704

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

_____

DL,
Petitioner/Plaintiff-Appellant,

vs.

CL,
Respondent/Defendant-Appellee.

_____

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-18-0000704; FC-D NO. 16-1-1014)

MEMORANDUM OPINION
(By: Recktenwald, C.J., Nakayama, McKenna, Wilson, and Eddins, JJ.)

## I.  INTRODUCTION

This case arises from the Family Court of the First Circuit's determination of child custody, child support, and alimony in a divorce proceeding between DL (Father) and CL (Mother).

Petitioner/Plaintiff-Appellant Father appeals from the Intermediate Court of Appeals' (ICA) July 29, 2021 Judgment on Appeal pursuant to its Memorandum Opinion vacating in part the family court's June 5, 2018 Order Re: Motion and Declaration for Pre-Decree Relief and the July 16, 2018 Order Re: Plaintiff's

Motion for Reconsideration of Order Re: Motion and Declaration for Pre-Decree Relief, with regard to alimony; vacating the August 13, 2018 Order Granting Defendant's Attorneys' Fees and Costs; and remanding for proceedings consistent with the opinion.  More specifically, the ICA remanded to the family court to recalculate the amount of delinquent pre-decree temporary child support, and to determine whether good cause existed to bifurcate with regard to past alimony.

In his current application for certiorari[1], Father presents two questions:

[1]   Did the ICA gravely err by finding bifurcation by the family court and remanding this case to the family court to determine whether good cause existed for the family court, post-trial and sua sponte, to "bifurcate" the issue of pre-decree spousal support requested by CL?
[2]   Did the ICA gravely err in affirming the family court's decision, made after entry of the divorce decree, to award past child support applicable to the time before the decree?

For the following reasons, we vacate the ICA's judgment on appeal to the extent it holds that the "Mother's April 18, 2018 Motion and Declaration for Pre-Decree Relief was in the nature of an enforcement action to collect delinquent pre-decree temporary child support." DL v. CL, 149 Hawaiʻi 206, 485 P.3d 1118, 2021 WL 1614343 at *7 (App. Apr. 26, 2021)

---

[1]  For a summary of the prior appeals in this matter, see DL v. CL, 149 Hawaiʻi 206, 485 P.3d 1118, 2021 WL 1614343 at *1-3 (App. Apr. 26, 2021) (DL IV).

2

(DL IV) (emphasis omitted).  In all other respects, the ICA's judgment is affirmed.

## II.  BACKGROUND

Father and Mother married in 2008 and have two children, both of whom were minors at the time of the divorce proceedings.  In 2015, Father, Mother, and children moved from Sacramento, California, to Honolulu to live in a cottage located on Father's parents' property.

On July 9, 2016, Mother took both children with her to Arizona due to alleged abuse by Father.  Father then filed a Motion and Declaration for Pre-Decree Relief on August 12, 2016. The family court[2] heard Father's motion on September 19, 2016, and awarded Mother temporary physical custody of the children in Arizona, pending further proceedings.  Three months later,  on December 16, 2016, the family court ordered Father to pay child support in the amount of $1,381 per child for a total of $2,762 per month commencing November 1, 2016.  The family court order did not mention alimony.

Mother and Father stipulated to, inter alia, the appointment of a custody evaluator on January 19, 2017. Following the custody evaluation, Father filed a Motion for the Immediate Return of the Children to the State of Hawai'i.  On

---

[2]  The Honorable Gale L.F. Ching presided over all proceedings.

May 12, 2017, the family court granted in part and denied in part Father's motion, and in particular, granted Father and Mother joint legal and physical custody. The court's order, however, specified that "[p]ending the Trial, [Father] shall have physical custody of the Minors" in Hawai'i, and "[a]ll prior orders not inconsistent with this Order shall remain in full force and effect." The order did not specifically address child support or alimony.

Mother returned to Hawai'i with the children in May 2017, and Father stopped making child support payments after July. Mother then filed a motion seeking, inter alia, that Father not have sole physical custody, that custody should instead follow a timesharing plan, and that Father should be required to pay Mother $2,762 per month for child support and $4,500 per month for alimony. On June 21, 2017, the family court ordered Mother and Father to mediation to resolve issues, including physical custody, child support, and alimony.[3] On July 26, 2017, following mediation, Mother and Father filed a stipulation agreeing to share physical custody equally pending trial, and to address the issues of temporary child support and temporary alimony "at trial together." Eight days later, on August 3, 2017, the family court ordered that Mother's request

---

[3] The Honorable Michael A. Town conducted the mediation.

4

for temporary alimony from June 1, 2017 and Father's request to modify or terminate temporary child support "[would] be added to the issues to resolve at trial."

The trial lasted twelve days over a six-month period. After the trial ended on January 8, 2018, the family court issued its First Amended Order Re: Evidentiary Hearing on March 16, 2018, which in relevant part, provides:

> 3.   Re: Child Support.
> As to any past unpaid child support amount that is allegedly outstanding, the Parties are ordered to "meet and confer" on this matter within fourteen (14) days after receipt of this order to discuss this matter.  In the event that the Parties are unable to reach an amicable resolution, then either Party may file a motion with the Court.
>
> . . .
>
> 5.   Re: Alimony.
> As to any past alimony amount that is allegedly outstanding, the Parties are ordered to "meet and confer" on this matter within fourteen (14) days after receipt of this order to discuss this matter.  In the event that the Parties are unable to reach an amicable resolution, then either Party may file a motion with the Court.

As part of its First Amended Order Re: Evidentiary Hearing, the family court also ordered Mother and Father to "meet and confer" regarding the Divorce Decree.  Additionally, in the event the Parties did not reach a resolution, each party was instructed to submit a draft Divorce Decree within seven days of the "meet and confer" conference.

On March 29, 2018, Mother submitted a Notice of Submission, stating that "both parties met and conferred . . . but no agreement on the language of the Decree was reached," and

5

filed her proposed Divorce Decree with the court. Father filed a similar notice on April 3, 2018. According to Father's proposed Divorce Decree, "Neither party owes the other back child support for any period of time . . . [and] [t]he Court, having found both Parties to be able to obtain gainful employment and presently employed, therefore denies any award of alimony."

On April 9, 2018, Father filed his objections to Mother's proposed Divorce Decree. Among his objections were the following:

> 9. [The family court's First Amended Order Re: Evidentiary Hearing] ordered Plaintiff to pay child support of $2,873 per month retroactive to February 1, 2018. Paragraph 9 of Defendant's proposed decree presents Defendant's desired version of child support on terms that have not been agreed or ordered by the Court. After trial ended Defendant left the children under the sole physical care of Plaintiff. If anyone should pay child support retroactive to February 1, 2018, it should be Defendant. Plaintiff objects to the retroactivity of an award of child support and objects to the amount of child support as unsubstantiated by the record or any identified rationale. As to the form of proposed decree, Plaintiff objects to the inclusion of anything more than is stated in the Order.

> 10. Plaintiff objects to paragraph 10 of Defendant's proposed decree. The issue of Past Child Support was specifically reserved and identified as an issue to be decided at trial. Trial concluded and the Court did not award past child support. In any event, Past Child Support is inappropriate, as the parties shared equal physical custody of the Children until Defendant left, and at all times have had effectively identical earning capacities, thereby rendering an award of child support improper during that time.

Prior to the family court issuing its Divorce Decree, Mother filed a Motion and Declaration for Pre-Decree Relief on April 18, 2018, requesting, among other things, that Father be

ordered to pay $16,572 in child support and $5,501.68 in alimony

($22,073.68 total) for the period June 2017 to January 2018

(which was when the evidentiary portion of the trial concluded).

According to Mother, she presented evidence during trial to

support her request for temporary alimony and child support.

On April 26, 2018, the family court granted Mother's

proposed Divorce Decree. The decree states in relevant part:

> 10. PAST CHILD SUPPORT. Pursuant to the First
> Amended Order Re: Evidentiary Hearing, filed March 16, 2018
> counsel for the parties met and conferred on March 27, 2018
> regarding the issue of past temporary child support.
> However, no agreement was reached. Pursuant to the First
> Amended Order Re: Evidentiary Hearing, either party can
> file a motion with the Court to address this issue.
>
> . . .
>
> 13. ALIMONY/PAST TEMPORARY ALIMONY. Pursuant to
> the First Amended Order Re: Evidentiary Hearing, filed on
> March 16, 2018, counsel for the parties met and conferred
> on March 27, 2018 regarding the issue of past temporary
> alimony. However, no agreement was reached. Pursuant to
> the First Amended Order Re: Evidentiary Hearing, either
> party can file a motion with the Court to address this
> issue.
>
> . . .
>
> 21. PRESENT AND FUTURE CLAIMS WAIVED. The parties
> shall release each other and relinquish all claims they
> have, or may have had with each other, whether growing out
> of their relationship as Husband and Wife or otherwise,
> from the beginning of time, either known or unknown,
> discovered or undiscovered, until the present. This means
> that the parties cannot (because they have voluntarily
> given up their rights to do so) sue or make any legal
> claims against each other based on any relationship they
> have had from the beginning of time to the present, whether
> they are aware of these claims or not, or even if they
> discover these claims in the future.
>
> . . .
>
> 23. RETENTION OF COURT'S JURISDICTION. Unless
> otherwise provided by statute, court rule or case law, the
> parties shall agree and by the Court's approval of this
> Decree, the Court shall so order that until there has been

> a final division and distribution of property in accordance with the terms of this Decree, and payment of all obligations required under this Decree, the Court shall retain jurisdiction over the parties and all properties mentioned herein, and retains the authority to issue any and all orders respecting the parties or properties in order to effect the intent of the parties herein and/or to facilitate the division and distribution of the various property interests, and payment of all obligations herein.

A week after the Divorce Decree was entered, the family court heard Mother's April 18, 2018 Motion for Pre-Decree Relief. On June 5, 2018, the court entered its order, granting in part and denying in part Mother's April 18, 2018 motion. The order, in relevant part, granted "monthly child support for the period from August 2017 through January 2018 in the amount of $5,232.00 . . . [and] alimony for the period of June 2017 to July 2017 and from August 2017 through January 2018 in the amount of $16,694.00." The family court also granted Mother's request for reimbursement relating to spring break travel in the amount of $913.94. In total, Mother was awarded $22,839.94. The family court, however, did not explain its rationale for the award. The court also granted Mother's request for attorneys' fees and costs associated with bringing the motion, and required Mother to submit a declaration "itemizing the requested attorney[s'] fees and costs." Mother submitted a declaration requesting $7,066.86 for fees and costs, which the family court awarded on August 13, 2018.

On appeal, the ICA vacated the June 5, 2018 Order Re: Motion and Declaration for Pre-Decree Relief with regard to

8

alimony; the July 16, 2018 Order Re: Plaintiff's Motion for Reconsideration with regard to alimony; and the August 13, 2018 Order Granting Defendant's Attorneys' Fees and Costs. Additionally, the ICA remanded to family court to recalculate the amount of delinquent pre-decree temporary child support and a determination of whether good cause existed for bifurcation of the issue of pre-decree temporary alimony and, if so, an entry of findings of fact and conclusions of law to determine such a determination. As to pre-decree temporary child support, the ICA concluded that child support becomes a liquidated sum and is therefore enforceable once it becomes due and payment is not made.

### III. STANDARD OF REVIEW

"Under the abuse of discretion standard of review, the family court's decision will not be disturbed unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant . . . [and its] decision clearly exceed[ed] the bounds of reason." In Interest of Doe, 77 Hawai'i 109, 115, 883 P.2d 30, 36 (1994) (alterations in original) (quoting Bennett v. Bennett, 8 Haw. App. 415, 416, 807 P.2d 597, 599 (1991)) (internal quotation marks omitted).

## IV. DISCUSSION

### A. The ICA Did Not Gravely Err When It Concluded That the Family Court Bifurcated, and Remanded Back to Family Court to Determine Good Cause as to Alimony

Father asks this court to provide "further guidance" to ensure that the family court makes a proper determination of whether bifurcation is warranted and to "promote finality and avoid protracted, piecemeal litigation." In other words, according to Father, family court should be required "to enter its financial orders at the same time it enters a divorce decree." We disagree. The language of HRS § 580-47(a) (Supp. 2011) clearly and unambiguously provides two conditions for a family court to exercise its authority to bifurcate: either "by agreement of both parties or by order of court after finding that good cause exists."

In support of his argument, Father cites to Gordon v. Gordon, 135 Hawai'i 340, 350 P.3d 1008 (2015) for the proposition that while the family court has wide discretion pursuant to HRS § 580-47, the family court "strives for a certain degree of uniformity, stability, clarity or predictability in its decision-making and thus are compelled to apply the appropriate law to the facts of each case and be guided by reason and conscience to attain a just result." Id. at 352, 350 P.3d at 1020 (internal quotation marks omitted) (quoting Tougas v. Tougas, 76 Hawai'i 19, 28, 868 P.2d 437, 446 (1994)). Father

10

argues that bifurcating proceedings would "result[] in piecemeal litigation," and so should be avoided. While Father correctly cites to our opinion in Gordon, uniformity and predictability are not mandates, but important considerations. Indeed, this court has concluded that the family court "must exercise its discretion within the framework provided by our law." Id. at 352, 350 P.3d at 1020. And under HRS § 580-47(a), the framework that the family court must consider when making further orders, either after agreement by both parties or a finding of good cause, includes:

> [T]he respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, the concealment of or failure to disclose income or an asset, or violation of a restraining order issued under section 580-10(a)[.]

HRS § 580-47(a); see Gordon, 135 Hawai'i at 352-53, 350 P.3d at 1020-21.

Remand may be proper where the family court, like here, fails to make adequate findings under HRS § 580-47. In Gordon, this court concluded that the ICA erred when it affirmed the family court's award for marital assets "absent a finding . . . regarding the date the divorce commenced[,]" because doing so made it "unclear" as to what qualified as a chargeable reduction in marital assets. Gordon, 135 Hawai'i at 355, 350 P.3d at 1023. Unlike in Gordon, here, the ICA correctly ruled

11

that the family court did not "make a specific finding of good cause" to bifurcate. DL IV, 2021 WL 1614343 at *7. We disagree with Father that it was improper to remand in these circumstances. The family court clearly exercised its discretion to reserve a decision on past alimony and child support, since it explicitly omitted those issues from the matters resolved in its March 16, 2018 First Amended Order. However, the family court failed to adequately explain its reasons for doing so. It was, therefore, appropriate for the ICA to remand to family court to determine if good cause existed to bifurcate.

### 1. A mandate that "intertwined issues [be] decided together" would be improper

It is unclear whether Father seeks (1) a holding that the family court erred in considering alimony and child support separately from the divorce proceeding, or (2) a holding that more generally mandates that any time the family court is faced with "intertwined issues" such as "various financial aspects (property division, child support and spousal support)," the issues must be decided together. In our view, neither is warranted.

This court has consistently held that the family court has "wide discretion." For example, we have held that HRS § 580-47 precludes our appellate courts "from narrowing the

12

discretion available to the various family courts by establishing and mandating adherence to uniform categories, [uniform starting points], uniform limits on the range of choice, and uniform procedures." Gussin v. Gussin, 73 Haw. 470, 478, 836 P.2d 484, 489 (1992) (quoting Bennett, 8 Haw. App. at 422, 807 P.2d at 601-02).  Moreover, in Gussin, we concluded that:

> When the directive to the court is to do what is just and equitable in the circumstances, of course, each case must be decided upon its own facts and circumstances. . . . [D]iscretion denotes the absence of a hard and fast rule. When involved as a guide to judicial action it means a sound discretion, that is to say, a discretion exercised not arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result.  This court has avoided, where possible, the adoption of general rules governing the division of marital assets, because such general rules create rebuttable presumptions, which narrow the discretion of family court judges, and are thus repugnant to HRS § 580-47.

Id. at 479-80, 836 P.2d at 489 (citations omitted) (quoting Myers v. Myers, 70 Haw. 143, 764 P.2d 1237 (1988) and Booker v. MidPac Lumber Co., 65 Haw. 166, 172, 649 P.2d 376, 382 (1982)) (internal quotation marks and brackets omitted).

Our decision in Kakinami v. Kakinami, 125 Hawai'i 308, 260 P.3d 1126 (2011), is instructive. There, the Respondent filed a motion to bifurcate the divorce proceeding and the division of property and debts.  The question on appeal was which standard should apply for bifurcation in divorce cases. Id. at 309-12, 260 P.3d at 1127-30.  The petitioner in Kakinami,

13

similar to Father in this case, argued that "[s]trong policy reasons support requiring family courts to decide all four parts [of a divorce case] at the same time [ ] absent exceptional circumstances.  Such reasons include avoiding piecemeal divorce trials, which could result in multiple appeals, clogging both trial calendars and appellate dockets."  Id. at 314, 260 P.3d at 1132 (alterations in original) (internal quotation marks omitted).  This court concluded that while "there may be valid policy reasons for imposing a stricter standard for bifurcation in divorce proceedings, HRS § 570-47(a) states that the appropriate standard to be applied is good cause."  Id. Additionally, "it is not the role of this court to alter a statutory requirement in order to effect policy considerations that are vested in the legislature."  Id. at 315, 260 P.3d at 1133.  Our rationale in Kakinami applies here.  If the legislature wanted to provide a stricter standard for bifurcation in divorce proceedings, it could have done so.  It is not our place to read into the statute what is not there.

### 2. "Good cause" should not be limited

Father argues that "[a]ny suggestion that Hawai'i's family court has broad discretion to delay ruling on issues that have already been tried, particularly absent a request from a party and without a substantial basis rooted in avoiding meaningful prejudice to a party, is simply untenable."

14

(Emphasis added.)  Father also argues that the "good cause" standard, according to our case law, has only been applied to "requests made by a party that a divorce be granted prior to trial on the remaining issues."

Father misreads the statute.  According to HRS § 580-47(a), "jurisdiction of those matters is reserved under the decree by agreement of both parties or by order of court after finding that good cause exists."  (Emphasis added.)  Here, while the parties stipulated to have all the issues be tried together at once, that does not end the analysis as the court may bifurcate sua sponte upon finding good cause.  As our decision in Kakinami notes, the statute is clear that the standard for bifurcation is good cause, and that any alteration to that standard is "vested in the legislature."  125 Hawai'i at 314-15, 260 P.3d 1132-33.  There is nothing in the statute that precludes the family court from ordering bifurcation despite the parties' stipulation to the contrary.

Furthermore, Father asserts that if the family court had intended to sua sponte bifurcate, "any such determination must be the product of the court's own thinking and based on the record that existed at the time."  We agree; the same point was addressed by the ICA when it remanded back to the family court "to determine whether good cause existed for bifurcation[.]"  DL IV, 2021 WL 1614343 at *7.  Remanding allows the family court to

15

develop the record as to whether there was good cause to bifurcate.

### 3. The Divorce Decree did not divest the family court of jurisdiction as to issues regarding past alimony and past child support

Father argues that once the Divorce Decree was entered, the family court lost jurisdiction over the remaining issues.  Father points to Paragraph 21 of the Divorce Decree, which states in relevant part:

> 21.   PRESENT AND FUTURE CLAIMS WAIVED.  The parties shall release each other and relinquish all claims they have, or may have had with each other, whether growing out of their relationship as Husband and Wife or otherwise, from the beginning of time, either known or unknown, discovered or undiscovered, until the present.  This means that the parties cannot (because they have voluntarily given up their rights to do so) sue or make any legal claims against each other based on any relationship they have had from the beginning of time to the present, whether they are aware of these claims or not, or even if they discover these claims in the future.

But Father disregards the other clauses in the Divorce Decree that explicitly carve out two issues to be addressed post-decree.  As Mother and the ICA pointed out, the other parts of the Divorce Decree[4] provide in relevant part:

---

[4]  The Divorce Decree also provides that:

> Both the Plaintiff and Defendant acknowledge that they have carefully read this Divorce Decree and all the other supporting financial and other supporting financial and other documentation pertinent to this matter. . . .  This document is the complete and final expression of all agreements made by the parties to this divorce.  There are no other express or implied promises, or agreements, which are not set forth herein.  Each party acknowledges that he or she has knowingly, intelligently and voluntarily executed this Decree with sufficient knowledge of the facts, the respective finances and the applicable law, and this Decree is fair and reasonable.

(continued...)

10.    PAST CHILD SUPPORT.  Pursuant to the First Amended Order Re: Evidentiary Hearing, filed March 16, 2018 counsel for the parties met and conferred on March 27, 2018 regarding the issue of past temporary child support.  However, no agreement was reached.  Pursuant to the First Amended Order Re: Evidentiary Hearing, either party can file a motion with the Court to address this issue.

. . .

13.    ALIMONY/PAST TEMPORARY ALIMONY.  Pursuant to the First Amended Order Re: Evidentiary Hearing, filed on March 16, 2018, counsel for the parties met and conferred on March 27, 2018 regarding the issue of past temporary alimony.  However, no agreement was reached.  Pursuant to the First Amended Order Re: Evidentiary Hearing, either party can file a motion with the Court to address this issue.

As noted above, the Divorce Decree explicitly contemplated that these two issues would be addressed post-decree by filing a motion with the family court.  The past child support and past alimony carve-outs and the waiver clause can thus be read in harmony, with the carve-outs not subject to the waiver.

Moreover, Paragraph 23 provides:

23.    RETENTION OF COURT'S JURISDICTION.  Unless otherwise provided by statute, court rule or case law, the parties shall agree and by the Court's approval of this Decree, the Court shall so order that until there has been a final division and distribution of property in accordance with the terms of this Decree, and payment of all obligations required under this Decree, the Court shall retain jurisdiction over the parties and all properties mentioned herein, and retains the authority to issue any and all orders respecting the parties or properties in order to effect the intent of the parties herein and/or to facilitate the division and distribution of the various property interests, and payment of all obligations herein.

_____

(continued...)

On appeal, Father contends that he never agreed to the form of the Divorce Decree, which was drafted by counsel for Mother.

17

(Emphasis added.)

Although this provision focuses on property, nevertheless, it sweeps more broadly such that the family court retained jurisdiction over allegedly unpaid alimony and child support.

**B. The ICA Erred in Concluding That Past Child Support Was in the Nature of an Enforcement Action**

The ICA read two paragraphs in the Divorce Decree - that Father characterizes as "essentially-identical" - differently. On the one hand, the ICA concluded that as to alimony, the family court erred when it did not make a finding of good cause when it bifurcated. On the other hand, the ICA concluded that the motion for past child support, pursuant to Mother's April 18, 2018 Motion for Pre-Decree Relief, "was in the nature of an enforcement action." Accordingly, the ICA ruled that "the family court had jurisdiction to decide that issue." DL IV, 2021 WL 1614343.

As discussed above, the ICA did not err when it vacated and remanded to the family court to determine whether good cause existed for bifurcation of the issue of pre-decree temporary alimony. While the Divorce Decree does include a waiver clause, it does not extinguish the family court's discretion to address past alimony because of the paragraph carving out that specific issue, as well as the paragraph that

18

maintains the family court's jurisdiction until all obligations are paid. However, with respect to child support, we disagree with the ICA and therefore remand to family court to also make a finding of good cause as to bifurcation as to child support. In other words, the ICA erred by treating the family court's disposition of child support differently from its disposition of alimony. The family court retained jurisdiction over both issues, subject only to a finding of good cause for bifurcating them from the Divorce Decree.

Father argues that the ICA misapplied Lindsey v. Lindsey, 6 Haw. App. 201, 716 P.2d 496 (1986), when it "incorrectly concluded that CL's claims survived the waiver within the divorce decree." We agree with Father that the ICA misapplied Lindsey, but for other reasons.

In Lindsey, the family court issued an Interlocutory Decree of Divorce that required the ex-husband to pay child support in the amount of $70 per month. 6 Haw. App. at 202-03, 716 P.2d at 498. The family court reaffirmed the child support amount in the Final Decree of Divorce. Id. The ex-husband appealed and raised multiple questions to the ICA, including "[w]hen does a court-ordered child support payment become an enforceable decree?" Id. The ICA concluded once child support "becomes due and payment is not made," that amount becomes a

19

"liquidated sum." Id. at 204, 716 P.2d at 499 (quoting Smith v. Smith, 643 S.W.2d 523, 524 (Tex. 1982)).

Lindsey is not applicable here. While in Lindsey, the ex-husband was ordered to pay child support as a result of both the Interlocutory Degree of Divorce and the Final Decree of Divorce, here, Father did not have a similar mandate. When the family court granted Mother's proposed Divorce Decree, it adopted the specific carve-outs regarding past alimony and past child support. Stated differently, orders regarding Father's past child support obligations did not become "due" when the family court declined to address the issue. Therefore, Mother's "right to collect past-due court-ordered child support payments from the payor" did not arise since the family court did not rule on the issue. Id. at 202, 716 P.2d at 497.

Based on the explicit language excluding past child support post-Divorce Decree, and the ICA's rationale in Lindsey, we find that the ICA incorrectly affirmed the family court's decision to consider Mother's request for enforcement of Father's delinquent pre-decree temporary child support obligations. Similar to alimony, the issue of child support is remanded to the family court to make specific findings regarding the basis for bifurcation.

## V. CONCLUSION

The ICA correctly remanded to the family court to determine whether good cause existed to bifurcate as to past alimony, but erred in not similarly remanding with regard to past child support. Accordingly, we vacate in part and affirm in part the ICA's July 29, 2021 judgment on appeal and remand to the family court. On remand, the family court must make findings regarding whether good cause existed to bifurcate as to past child support and enter findings of fact and conclusions of law with respect to any award of past child support. The ICA's judgment, in all other respects, is affirmed.

DATED: Honolulu, Hawai'i, January 28, 2022.

Philip J. Leas
and DL
for petitioner

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

CL
Self-represented respondent

/s/ Sabrina S. McKenna



/s/ Michael D. Wilson

/s/ Todd W. Eddins